UNITED STATES *v.* JULIUS KAYSER & Co. (No. 4516)[1]

United States Court of Customs and Patent Appeals, March 30, 1946

*Paul P. Rao,* Assistant Attorney General (*Joseph F. Donohue, Alfred A. Taylor, Jr.,* and *Arthur R. Martoccia,* special attorneys, of counsel), for the United States. *John R. Rafter* (*Edward P. Sharretts* of counsel) for appellee.

[Oral argument February 5, 1946, by Mr. Donohue and Mr. Rafter]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

Appellee imported at the port of New York 200 dozen gloves described on the consular invoice as "Children's Simplex Cotton Slip-on

---

[1] O. A. D. 333.

Gloves with spear point, kip seam, usual thumb, scalloped, under 11 inches long." The Collector of Customs classified the merchandise and assessed it with duty at 60 per centum ad valorem under paragraph 915 of the Tariff Act of 1930 as cotton gloves made of fabric knit on a warp-knitting machine. The importer in its protest claimed the proper assessment to be 50 per centum ad valorem as gloves made of fabric knit on other than a warp-knitting machine, under the same paragraph, which reads as follows:

PAR. 915. Gloves and mittens, finished or unfinished, wholly or in chief value of cotton or other vegetable fiber: Made of fabric knit on a warp-knitting machine, 60 per centum ad valorem; made of fabric knit on other than a warp-knitting machine, 50 per centum ad valorem; made of woven fabric, 25 per centum ad valorem.

The issue was tried before the Second Division of the United States Customs Court, which rendered judgment sustaining appellee's protest, from which judgment the Government appealed. Much testimony was taken, 9 witnesses appearing for appellee and 18 for appellant, and many exhibits were received in evidence.

The only issue before us, as before the trial court, is whether the machine which produced the fabric of which the gloves were made is a "warp-knitting machine" or "other than a warp-knitting machine."

There is no question but that the merchandise was made from a fabric which was knitted on a Simplex machine. All of the witnesses for appellee testified that machine to be as claimed by appellee, for the reason that it is "other than," "different from," or "more than" a warp-knitting machine. They described how the Simplex machine differed from a warp-knitting machine in structure, design, and the kind of material produced. They identified tricot and milanese machines as warp-knitting machines.

The witnesses for appellant stated the Simplex machine to be similar to what they said was a double tricot machine made and in use in the United States. The substance of their testimony was that the latter machine was in effect two tricot machines operating together to produce a fabric tensilely stronger than that made in the single tricot machine, but that the fabrics produced by both machines are "warp-knit."

It appears that fabrics warp-knit on machines are usually of one layer in that the needle loops are made in rows one above the other lengthwise of the fabric. Each horizontal row of needle loops, known as a "course," is connected with its preceding course by suspending from the next loop of the next higher course the needle loop of the lower course. This is characteristic of all knit fabrics. In warp-knit fabrics, the needle loops are also joined side to side with what is known as a "sinker-loop." This loop is of the same thread as that from which the needle loops are made. The sinker loop takes its name

from a part of a knitting machine called a "sinker." It follows that the described fabric has all of its loops in the same plane.

The imported gloves are in effect two-layer fabrics in each of which there are horizontal rows of needle loops, each above the next preceding row and extending through the fabric length. The sinker loops in this type of fabric, instead of being in the plane with the needle loops, run in depth from face to face through the fabric.

The machine on which the single layer fabric is knit comprises a single needle bar to which are fed threads on one or more thread-guide bars. It has one operating side and the action of the machine is governed by a cam. In its operation it produces warp-knit fabric as above described.

The Simplex machine has two operating sides, each comprising a cam shaft and cams to operate two needle bars, presser bars and sinker bars. Thus it appears to comprise in effect double elements of the tricot machines. The thread guides of the Simplex machine are so located and operated as to carry the threads backward and forward from the needles of one needle bar to the needles on the other needle bar between the looping operations. The tricot or single needle bar machine carries its threads laterally only to and from needles on the single needle bar on either side of each other. The product of the Simplex machine seems to be two layers of fabric interknitted by the sinker loops. It differs from the product of the tricot machine in that it is about twice as thick, softer, and has the same surface characteristics on both sides.

All of what has been heretofore said with respect to the make-up of knitting machines and their products is not disputed. The conflict in evidence results from the conclusions of the witnesses of the parties as to the name given to the machine which produces Simplex cloth.

It appears that the fabric made on tricot or other one needle bar warp-knitting machines has been found to be undesirable during the cold season because of its lack of warmth. To provide a warp-knit glove which would be warm in cold weather, the fabric was made into two-layer goods by pasting the single layers together, ordinarily back to back. Such material was called "Duplex." It was found that Duplex fabric was likely to separate or become stiff on being washed. In order to do away with that effect the Simplex machine was designed to produce the Simplex cloth above described.

Each face of the Simplex cloth contains loops of the same formation as the outer face of tricot cloth. There is a decided difference, however, between the structures of the single needle bar machine and the Simplex machine, and their modes of operation, particularly with reference to the formation of the sinker loops, are radically different. The Simplex machine is so constructed that it is incapable of producing anything but Simplex cloth.

Appellant's contention is that paragraph 915 provides among other things for all cotton fabric gloves, of any type or character, which are made on a warp-knitting machine. This seems to be true, but does not dispose of the issue here. Appellant also contends that all knitting machines fed from a warp beam are warp-knitting machines. The record refutes that theory. Appellant further claims that the legislative history of the involved paragraph and its predecessors supports its contention.

It appears that Simplex cloth was developed "around 1925, 1926 or 1927," and that prior to that time there was in the glove industry only the tricot or single layer fabric and the Duplex made by pasting. It seems that Simplex cloth was not made in the United States until about 1938. Thus there was no American industry in the manufacture of Simplex cloth to protect prior to and during the preparation of the present tariff act.

Our search of textile writings and legislative history, together with the conflicting conclusions in the evidence, convinces us that there is no recognized standard by which warp-knitting machines are known by name. However, we find in Funk & Wagnalls New Standard Dictionary, 1938, a definition of warp knitting as follows: "Knitting in which certain threads are interlinked with other adjacent threads on either side." That definition would indicate that warp knitting is such as that described by the witnesses of appellee, from which it would follow that a warp-knitting machine is a device containing a single needle bar.

The trial court weighed the evidence and found from a preponderance of it that the Simplex machine is not a warp-knitting machine. The fact that the trial court stated in its decision that the witnesses of appellant testified to the truth "as they honestly believed in the light of their experience" does not, as contended by appellant, balance the weight of the evidence. We are convinced that the finding made by the trial court, is not contrary to the weight of the evidence. *United States* v. *Winograd Bros., Inc.*, 32 C. C. P. A. (Customs) 153, C. A. D. 302; *United States* v. *Arnhold & Co., Inc., et al.*, 27 C. C. P. A. (Customs) 135, C. A. D. 74; *United States* v. *Flexideal Dry Mat Co.*, 23 C. C. P. A. (Customs) 270, T. D. 48113; *Joseph W. Callbeck* v. *United States*, 21 C. C. P. A. (Customs) 1, T. D. 46318; *United States* v. *John B. Stetson Co.*, 21 C. C. P. A. (Customs) 3, T. D. 46319; *Walter Johnson* v. *United States*, 21 C. C. P. A. (Customs) 129, T. D. 46464; *United States* v. *Bosca Reed MacKinnon Co. et al.*, 21 C. C. P. A. (Customs) 358, T. D. 46888.

The judgment appealed from is *affirmed.*